STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1050

STATE OF LOUISIANA

VERSUS

BETTY FINDLAY

**********
APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 05-143
HONORABLE W. PEYTON CUNNINGHAM, JR., DISTRICT JUDGE

**********
ULYSSES GENE THIBODEAUX
CHIEF JUDGE
**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.

AFFIRMED.

Paula Corley Marx
Louisiana Appellate Project
P. O. Box 80006
Lafayette, LA 70598-0006
Telephone:  (337) 991-9757
COUNSEL FOR:
    Defendant/Appellant - Betty Findlay

Honorable James Patrick Lemoine
District Attorney, Thirty-Fifth Judicial District Court
James D. White, Jr.
Assistant District Attorney, Thirty-Fifth Judicial District Court
P. O. Box 309
Colfax, LA 71417
Telephone:  (318) 627-3205
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

**THIBODEAUX, Chief Judge.**

The Defendant, Betty Findlay, withdrew her former plea of Not Guilty and Not Guilty by Reason of Insanity and entered a guilty plea pursuant to an agreement with the State. The Defendant pled guilty to manslaughter in violation of La.R.S. 14:31, attempted second degree murder in violation of La.R.S. 14:30.1 and 14:27, obstruction of justice in violation of La.R.S. 14:130.1, and five counts of forgery in violation of La.R.S. 14:72. Pursuant to the agreement, the Defendant's sentence would be capped at forty years cumulatively for all charges, which would run consecutively to a seven year sentence for a conviction in Rapides Parish. Additionally, the agreement included a provision that the Defendant would be allowed to appeal only the issue of excessiveness of sentence on appeal and waived all other matters, including post-conviction relief. A pre-sentence investigation report was ordered by the court.

On May 18, 2006, the Defendant was sentenced to serve forty years at hard labor for the manslaughter conviction, forty years at hard labor for the attempted second degree murder conviction, and eight years for the obstruction of justice conviction and eight years for each of the forgery convictions. All of these sentences were ordered to be served concurrently to each other, but consecutively to the seven year sentence on a forgery conviction in Rapides Parish.

## ISSUES

The Defendant is now before this court, alleging that the sentence imposed by the trial court was unconstitutionally excessive and that the trial court failed to consider her mental illness during sentencing. She also alleges that she did not receive effective assistance of counsel because her trial counsel failed to timely file a motion to reconsider her sentence. For the following reasons, the Defendant's

sentence is affirmed with amendments made to the minutes pursuant to the Errors Patent analysis.

## STATEMENT OF THE FACTS

The Defendant was implicated in three separate investigations which occurred during the same time frame. Marlin Keith Smith and the Defendant were in a relationship and lived together, along with Mr. Smith's mother, Barbara Smith.

Police were alerted to a number of forged checks that had been written from Barbara Smith's bank accounts. Their investigation revealed that the Defendant had accessed Barbara Smith's accounts on five occasions without her knowledge or consent.

During the time of the investigation, Ms. Smith began feeling ill and required hospital treatment on a number of occasions. Her physicians were unable to diagnose her symptoms, which included slurred speech and difficulty standing. Ms. Smith would enter the hospital for treatment and begin to improve, but would have a relapse with the same symptoms after her release. A toxicology screen revealed levels of Ambien, hydrocodone and opiates in her system that were not consistent with her prescriptions. Police tested a cup that the Defendant had used to give Ms. Smith her morning coffee and found hydrocodone and Ambien in the cup. The assistant district attorney stated that the amount found in the cup was sufficient to prevent her ability to walk that day.

During the initial forgery investigation, Marlin Keith Smith was reported missing by relatives on November 12, 2004. The Defendant told police that they were having financial difficulties and Mr. Smith had gone to New Mexico for work; she stated that they had been speaking weekly on the telephone. The Defendant became a suspect when her phone records reflected that she had not been receiving

any calls from New Mexico. Additionally, family members reported a suspicious hole which showed signs of recent digging in the back yard of the home the Defendant shared with Mr. Smith and his mother. A police search of the hole revealed small portions of human remains. The Defendant later told police that she had shot Mr. Smith during an argument and killed him. She buried the body in the back yard, but due to the heat, the body did not remain concealed in the earth. Concerned that the body would be found, she stated that she used three types of saws to dismember his body, put it into trash cans and stored it in a local mini-storage facility. The Defendant subsequently cleaned the crime scene with bleach.

## LAW AND DISCUSSION

The Defendant asserts that her sentence is unconstitutionally excessive and that the trial court failed to consider her mental illness in determining her sentence. She also alleges that trial counsel's failure to file a motion to reconsider her sentence constituted ineffective assistance of counsel.

Louisiana Code of Criminal Procedure Article 881.1 states that within thirty days of the imposition of a sentence, a defendant may make or file a motion to reconsider that sentence. Generally, the failure to make or file a timely motion to reconsider precludes a defendant from raising an objection to the sentence on appeal. *State v. Sullivan*, 02-360 (La.App. 3 Cir. 10/2/02), 827 So.2d 1260, *writs denied*, 02-2965 (La. 9/5/03), 852 So.2d 1024, 02-2931 (La. 4/21/03), 841 So.2d 790. However, in the instant matter, the Defendant argues that trial counsel's failure to file the motion to reconsider constituted ineffective assistance and should not bar appellate review of his sentence.

3

This court considered a similar issue in *State v. Prudhomme*, 02-511, p. 16 (La.App. 3 Cir. 10/30/02), 829 So.2d 1166, 1177, *writ denied*, 02-3230 (La. 10/10/03), 855 So.2d 324, stating:

> Failure to file a motion to reconsider the sentence does not necessarily constitute ineffective assistance of counsel. *State v. Texada*, 98-1647 (La.App. 3 Cir. 5/5/99); 734 So.2d 854. Nevertheless, the defendant may have a basis to claim ineffective assistance of counsel when he can show a reasonable probability, but for defense counsel's error, his sentence would have been different. *Id.* Furthermore, in *State v. Francis*, 99-208 (La.App. 3 Cir. 10/6/99); 748 So.2d 484, *writ denied*, 00-0544 (La. 11/13/00); 773 So.2d 156, this court stated:
>
> > A claim of ineffective assistance of counsel is properly raised in an application for post conviction relief. This allows the trial judge an opportunity to order a full evidentiary hearing on the matter. *State v. Burkhalter*, 428 So.2d 449 (La.1983). However, where the record contains evidence sufficient to decide the issue and the issue is raised by an assignment of error on appeal, it may be considered. *State v. James,* 95-962 (La.App. 3 Cir. 2/14/96); 670 So.2d 461.

There is sufficient evidence in the record to address the Defendant's ineffective assistance claim and determine whether there was a reasonable probability that the trial court would have reduced her sentence had a motion to reconsider been filed.

At the Defendant's hearing, the trial court articulated its reasons for sentencing as follows:

> All right. The, the pre-sentence investigation report that I have before me, and which I shared with defense counsel earlier this morning, shows that Betty Findlay is a multi-offender. She was charged with committing second degree murder of Marlin Keith Smith on October the 20th, 2004. On the same day she committed obstruction of justice, and several dates in September of 2004 she committed five counts of felony forgery. She has the felony forgery charge in Rapides Parish that was nolle

4

prosed in 1993. She has issuing worthless check charge in Rapides Parish which was nolle prosed in 1994. She was brought to court in Alexandria in 1993 on a charge of forgery. She pled guilty and was given a one year sentence suspended and put on probation which ended in 1996. In September, 1996, one month after she was off of probation, she committed what is called bank fraud. She pled guilty and was given a five year sentence. To the Department of Corrections which was suspended. In July of 1997 in Rapides Parish she was charged with issuing worthless checks; that was nolle prosed [sic] June of 2001. April of 2001 she was charged with identity theft. She pled guilty and was given one year at hard labor with the Department of Correction. October of 2004 in Rapides Parish she was charged with these things here in Grant Parish. In September of 2004 in Rapides Parish she was charged with several counts of forgery and she pled guilty on May 1st, 2006. She received a seven year sentence to the Department of Correction. She stands before the Court today for sentencing on a manslaughter charge, attempted second degree murder charge, obstruction of justice and five counts of forgery. I believe sincerely that the defendant is in need of correctional treatment or ... and a custodial environment that can be provided most effectively by her commitment to an institution. I firmly believe that a lesser sentence will deprecate the seriousness of the defendant's crime. I find that her conduct during the commission of these offenses manifested deliberate cruelty, probably to Keith Smith and certainly to Betty ... to Barbara Smith who she tried to poison. I find that Betty Findlay knew or should have known that Barbara Smith was particularly vulnerable and incapable of resistance due to her age or disability and ill health. I find that she used her position as the lover of Keith Smith and friend to Betty [sic] Smith of a status to facilitate commission of these offenses. And I find that she knowingly created a risk of death or great bodily harm to more than one person. I have searched diligently through the record to try to find some extenuating circumstances, but I have found none.

The Defendant's main argument on appeal is that although she was found competent to stand trial, her mental health should have been considered as a critical factor at sentencing. The Defendant specifically notes the trial judge's statement that he could not find any extenuating circumstances in the record. She argues that the physicians who examined her during the Sanity Commission testified

regarding her mental illness and that the trial court failed to consider those concerns sufficiently to provide her with an individualized sentence pursuant to La.Code Crim.P. art. 894.1.

The only support the Defendant offers for her argument comes from her Sanity Hearing, wherein testimony was taken from Detective Jody Bullock of the Grant Parish Sheriff's Department, Dr. I. C. Turnley, Jr. and Dr. Kenneth Bills. Detective Bullock testified generally that, although she was upset at times and changed her stories, the Defendant did not behave irrationally or appear to have any problems communicating during his interviews with her.

Dr. Turnley testified that it was his opinion that the Defendant had "multiple underlying deep-seated personality problems[,]" which required long-term psychiatric treatment before the Defendant could stand trial. He stated that he believed she had a personality deficiency and not a brain defect such as psychosis or schizophrenia. He stated that he believed that treatment for the personality deficiency would not take a long extended period of time and would "clear some of these foggy ideas and happenings here that are inconsistent." He also stated that she wanted the victim dead and "knew she was wrong, but she wanted to do it anyway."

Dr. Binns testified that he believed the Defendant could tell right from wrong, although she had some antisocial tendencies. He stated that the Defendant showed signs of depression and anxiety, although those were likely situational and due to her concern over the legal charges. When asked about inpatient treatment, he stated that the Defendant "most likely does need some treatment, but she can certainly get that in other ... at... venues. [sic]"

The trial judge who sentenced the Defendant also presided at the sanity commission hearing and heard this testimony. The trial judge also heard statements

6

from both the Defendant and Ms. Smith and her son, Keith Smith, at the sentencing hearing. Moreover, he stated that he was considering the pre-sentence investigation, which included multiple felony charges and convictions. The trial judge also considered the cruel nature of the crimes committed, particularly the manslaughter and attempted second degree murder, noting that he believed the Defendant used her position to take advantage of the victim's vulnerabilities and trust. The trial judge noted numerous other factors outlined in La.Code Crim.P. art. 894.1, including his belief that the Defendant was in need of a custodial environment through her commitment to an institution, a lesser sentence would deprecate the seriousness of the crime and the risk of death that she knowingly created with her actions.

Based on the fact that the trial judge presided over the sanity commission hearing, heard the Defendant's statements and clearly considered the details of the pre-sentence report and guidelines of La.Code Crim.P. art. 894.1 in its reasons for judgment, we conclude that it is not likely that the trial court would have reduced the Defendant's sentence if a motion to reconsider had been made.

This court has considered a defendant's excessive sentence claim despite its finding that there was not a reasonable probability of a sentence reduction had trial counsel filed a motion to reconsider. *State v. White*, 03-1535 (La.App. 3 Cir. 4/28/04), 872 So.2d 588; *see also State v. Blake*, 03-1465 (La.App. 3 Cir. 5/5/04), 872 So.2d 602 (applying a "two-part inquiry" analysis in which the excessive sentence determination constituted the second prong).

In *State v. Wilturner*, 03-719, pp. 5-6 (La.App. 3 Cir. 11/5/03), 858 So.2d 743, 746, a panel of this court provided the following analysis of the law pertaining to excessive sentence claims:

> The standard of review for Louisiana appellate courts in determining whether a sentence levied upon a

7

particular defendant was excessive is the manifest-abuse-of-discretion standard. *State v. Guzman*, 99-1753 (La. 5/16/00), 769 So.2d 1158. A trial judge has considerable latitude in imposing sentences within the constraints provided by law. *State v. Thompson*, 02-0333 (La. 4/9/03), 842 So.2d 330. However, in *State v. Marshall*, 94-0461, p. 24 (La. 9/5/95), 660 So.2d 819, 829, the Louisiana Supreme Court held that "[a] sentence may violate a defendant's constitutional right against excessive punishment even if it is within the statutory limit," *citing State v. Sepulvado*, 367 So.2d 762 (La.1979). Furthermore, under both United States and Louisiana law, a sentence is unconstitutionally excessive if it "(1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *Coker v. Georgia*, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977); *State v. Handy*, 96-2505, p. 1 (La. 1/6/97), 686 So.2d 36, 37, citing *State v. Dorthey*, 623 So.2d 1276 (La.1993). The Louisiana Supreme Court has provided a list of several factors that appellate courts are to consider in ascertaining whether a sentence, by its excessive duration or severity, is grossly disproportionate to the underlying offense. *State v. Baxley*, 94-2982 (La. 5/22/95), 656 So.2d 973, *citing State v. Telsee*, 425 So.2d 1251, 1253 (La.1983). The appellate court's analysis of the sentence is cumulative and centers on an amalgam of relevant factors. *Id.* Among these factors the supreme court notes, are "the nature of the offense and the offender, a comparison of the punishment with sentences imposed for similar crimes, the legislative purpose behind the punishment, and a comparison of the punishment provided for this crime in other jurisdictions." *Baxley*, 656 So.2d at 980, *citing Telsee*, 425 So.2d at 1253-54.

*Id.* (Alteration in original).

This court has held that when the offense to which the defendant pled guilty does not adequately describe his conduct, the district court may take into consideration the benefit the defendant obtained through the plea bargain. *State v. Williams*, 02-707 (La.App. 3 Cir. 3/5/03), 839 So.2d 1095 (citing *State v. Lanclos*, 419 So.2d 475 (La.1982)). In *Williams*, this court further stated that the district court "should particularly make such considerations where the plea bargain results in a

significant reduction in the defendant's potential exposure to imprisonment." *Id.* at 1101 (citing *State v. Robinson*, 33,921 (La.App. 2 Cir. 11/1/00), 770 So.2d 868; *State v. Waguespack*, 589 So.2d 1079 (La.App. 1 Cir. 1991), *writ denied*, 596 So.2d 209 (La.1992)). Based on the trial court's statements at the Defendant's guilty plea hearing, the potential maximum sentence in the instant matter could have been 160 years imprisonment in addition to $75,000 in fines.[1] However, pursuant to her plea agreement, her sentence was limited to a range of thirty to forty years. Thus, the Defendant received a significant benefit from her plea agreement, which capped her sentencing exposure at forty years.

The trial court specifically noted the Defendant's criminal history, which involved numerous offenses similar to the five forgery counts now being considered. According to the trial court in its reasons for sentencing, the Defendant's pre-sentence investigation indicated that she had numerous previous charges for issuing worthless checks which had been nolle prossed. She also had previous convictions for forgery, bank fraud and identity theft.

Our review of the circumstances of this case reveals no abuse of discretion in the trial court's reasoning and imposition of sentence. Although the trial court did not discuss the Defendant's mental state in its reasons for sentence, it carefully considered the details of the pre-sentence investigation and the factors outlined in La.Code Crim.P. art. 894.1 in determining the sentence. The sentences are further warranted by the violent, cruel nature of the crimes against Mr. Smith and his mother and the lengths to which she went to prevent detection of the crimes.

---

[1] The maximum sentence for manslaughter, as provided by La.R.S. 14:31, is not more than forty years. The maximum sentence for attempted second degree murder, as provided by La.R.S. 14:30.1 and 14:27, is fifty years. The maximum sentence for obstruction of justice, as provided by La.R.S. 130.1, in this matter would likely have been twenty years and/or a fine not to exceed $50,000. The maximum sentence for each of the five counts of forgery, as provided by La.R.S. 14:72, is ten years imprisonment and/or a fine not to exceed $5,000.

Consequently, the Defendant's sentence was not excessive and her assignments are without merit.

## ERROR PATENT

There are no errors patent, but the minutes of both the guilty plea proceeding and sentencing require correction.

The minutes of the guilty plea proceeding indicate the Defendant entered a plea of guilty to only Counts I, II and III; however, the transcript of this proceeding indicates the Defendant entered pleas of guilty to all eight counts with which she was charged. Accordingly, the minutes of this proceeding should be amended to reflect all charges to which the Defendant pled guilty.

Next, the minutes of sentencing do not include the sentences imposed by the court on Counts V through VIII. Thus, the sentencing minutes should also be amended to reflect the sentences imposed on all counts.

## CONCLUSION

The Defendant's sentence is affirmed. However, the minutes of the guilty plea proceeding should be amended to reflect all charges to which the Defendant pled guilty. Additionally, the minutes of sentencing should be amended to reflect the sentences imposed on all counts.

**AFFIRMED.**